Russell S. Walker, #3363
WOODBURY & KESLER, P.C.
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT  84110-3358
Telephone: (801) 364-1100
Telefax: (801) 359-2320
rwalker@wklawpc.com

Attorneys for U.S. Bank National Association

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| In re:<br><br>ALTHEA LABRUM<br><br>Debtor. | Case No.  09-33057<br>Chapter 7<br><br>Judge R. Kimball Mosier |
|---|---|

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

U.S. Bank National Association ("U.S. Bank") a secured creditor, by its attorneys, Woodbury & Kesler, P.C., pursuant to Bankruptcy Rules 4001 and 9014 and Local Rules 4001-1 and 9013-1,  moves the Court for an  Order modifying, annulling and terminating  the automatic stay imposed by 11 U.S.C. §362(a) for cause, including lack of adequate protection, and allowing U.S. Bank to foreclose the real property of Althea Labrum  ("Labrum")  as follows:

1        This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(b), and 11 U.S.C. §362.

2.        U.S. Bank is a national banking association organized and authorized to do business under the laws of the State of Utah.

3. Labrum filed a voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. §101 et. Seq.), Case No. 09-233057 on November 23, 2009.

4. U.S. Bank is a secured creditor of Labrum having a claim in the principal sum of $62,505.18 as of November 23, 2009, secured by a second position Trust Deed on real property in which Labrum may claim an interest which property is located at 5724 Whitehead Drive, Salt Lake City, Utah, 84118 ("Property"). U.S. Bank also claims accrued interest, costs and attorneys' fees in addition to the stated principal amount.

5. On November 15, 2006, U.S. Bank made a consumer loan to Labrum and her husband, Orren Labrum, who executed and delivered to U.S. Bank a promissory note ("Note") in the principal sum of $60,000.00. A copy of the Note is attached hereto marked as Exhibit "A" and by this reference is made a part hereof.

6. At the same time and as part of the same transaction and as security for payment of the Note, Labrum and her husband executed and delivered to U.S. Bank a Deed of Trust ("Trust Deed") on the Property. The Trust Deed was dated November 15, 2006, and was recorded on December 14, 2006, as Entry No. 9939606, in Book 9394, at Pages 4704-4710 in the records of the Salt Lake County Recorder's Office. A copy of the Trust Deed is attached hereto marked as Exhibit "B" and by this reference is made a part hereof.

7. Pursuant to the Note and Trust Deed, Labrum agreed to pay U.S. Bank's costs and expenses of collection including reasonable attorney's fees if Labrum defaulted under the Note and Trust Deed.

8.  Pursuant to the Note and Trust Deed, Labrum was to make regular monthly payments of principal and accrued interest, taxes and insurance.

9.  Pre-petition Labrum failed to make the monthly payments due under the Note for the months of April 25, 2009 through and including November 23, 2009 in the approximate sum of $3,460.37, together with interest and costs of collection. Labrum has also failed to make any post-petition payments on the loan to U.S. Bank. On October 10, 2009, Lambrum deeded the Property to Orren Labrum, her husband. Labrum also stated in her Chapter 13 Plan that she intends to surrender the Property.

10.  Labrum's failure to make the payments due to U.S. Bank and the Debtors' Statement of Intention provides for surrender of the Property and her conveyance of the Property constitutes cause for terminating the automatic stay.

11.  U.S. Bank's Trust Deed is in a second position behind the first lien holder, U.S. Bank National Association, N.D, whose senior lien securing a loan in the original principal sum of $60,000 continues to accrue interest and continues to erode the equity in the property.

12.  The automatic stay provided under 11 U.S.C. § 362(a) should be terminated to allow U.S. Bank, its successors and assignors to foreclose and recover possession of the Property or the court should order the Debtor to provide U.S. Bank with adequate protection of its interest in the Property.

13.  U.S. Bank requests pursuant to rule 4001(a)(3) that the Order Terminating the Automatic Stay not be stayed ten days and that the Order be enforceable upon entry.

14. Orren Labrum is not a debtor in this Chapter 13 bankruptcy case. However, Orren Labrum filed a voluntary petition under Chapter 13 of the Bankruptcy Code (11 U.S.C. §101 et. Seq.), Case No. 08-26780 on May 29, 2008. On September 8, 2009, the case was converted to a Chapter 7 case.

15. U.S. Bank filed a Motion for Relief from the automatic stay with the Court on November 3, 2010 in Orren Labrum's case and received relief form the automatic stay in an Order dated December 11, 2010.

16. U.S. Bank is entitled to relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d) including the following.

    a. Labrum has failed and continues to fail to make the contractually required periodic payments to U.S. Bank. Labrum's failure to make payments and to provide adequate protection for the collateral constitutes cause pursuant to 11 U.S.C. §362(d)(1).

    b. Labrum's delay and failure to pay the contractually required monthly payments to U.S. Bank and the senior lien holder are prejudicial to the rights of U.S. Bank.

    c. There is no equity in the Property for the bankruptcy estate and the Property is burdensome and of inconsequential value to the estate and is

    not necessary for Labrum's effective reorganization which also constitutes cause under 11 U.S.C. § 362(d)(2).

  d. Labrum's failure to pay these debts places U.S. Bank in jeopardy of being foreclosed out and losing its collateral and therefore Labrum is not providing adequate protection of U.S. Bank's loan and Trust Deed.

  WHEREFORE, U.S. Bank requests the Court enter an Order granting U.S. Bank relief from the automatic stay under 11 U.S. C. §362 (d) (l) and (2) allowing U.S. Bank to proceed with its remedies according to applicable law and the Trust Deed and thereafter to apply the proceeds of any sale or disposition according to the Trust Deed and applicable law, and for such other and further relief as the Court deems just and equitable.

  DATED this 3rd day of February, 2010.

                **WOODBURY & KESLER, P.C.**

                /s Russell S. Walker
                Russell S. Walker
                Attorneys for U.S. Bank National Association

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 3rd day of February, 2010, I caused to be served mailed a true and correct copy of the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** via ECF to the registered users and postage prepaid, by First-Class U.S. Mail as indicated:

        Althea Labrum
        274 Twin Bridges Lane
        Midvale, UT 84047

        Orren H. Labrum
        5724 Whitewood Drive
        SLC, UT 84118

                                  /s/ Carolee Kirk

# EXHIBIT "A"

| Borrower(s) | Lender | Loan |
|---|---|---|
| ALTHEA L LABRUM<br>ORREN H LABRUM<br><br>5724 S WHITEWOOD DR<br>SALT LAKE CTY UT 84118-3651 | U.S. Bank National Association ND<br>4701 WEST 2100 SOUTH<br>SALT LAKE CITY UT 84120 | Number __511498077__<br>Date __11/15/2006__<br>Maturity Date __11/25/2036__<br>Loan Amount $ __$60,000.00__<br>Renewal Of _____ |
| "I" means each Borrower above, jointly and severally. | "You" means the Lender, its successors and assigns. | |

Note - For value received, I promise to pay to you, or your order, at your address above, the principal sum of: __$60,000.00__
_____ Dollars $ __$60,000.00__ .
plus interest from __11/15/2006__ at the rate of __7.490__ % per year until __maturity__ .

☐ Additional Finance Charge - I also agree to pay a nonrefundable fee of $ _____ and it will be ☐ paid in cash.
☐ withheld from the proceeds. (If this fee is withheld from the proceeds, the amount is included in the principal sum.)
☐ Variable Rate - The (annual) interest rate above may change so as to be _____
_____
_____
Timing and Frequency of Interest Rate Changes - The rate can first change on _____
and can change as often as _____ after that.
Lifetime Rate Change Limitations - The rate cannot ever exceed _____ . The rate cannot ever be less than _____ .
Payment Changes - A change in the interest rate will change: ☐ The amount of each scheduled payment. ☐ The amount due at maturity.
Post Maturity Interest - Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues before maturity.
☐ Terms - If checked, terms provided reflect an adjustment to the lowest annual percentage rate available for this loan product. This adjustment reflects a higher rate of interest or finance charge due to information contained in a consumer credit report. You obtained this report from, and I may obtain a free copy of it by contacting:

Payments - I will pay this note as follows:
(a) ☐ Interest payments will be due _____
      Principal payments will be due _____
(b) ☒ This note has __360__ payments. The first payment will be in the amount of $ __419.99__ and will be due __12/25/2006__ . A payment of $ __419.99__ will be due on the __25th__ day of each __month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __11/25/2036__ .

The Purpose Of This Loan Is __Debt consolidation__
☒ Late Charge - I agree to pay a late charge if any scheduled payment (or part thereof) is made more than __5__ days after it is due equal to __$29.00__
☒ Early Closure Fee - If I prepay this loan in whole, I will pay you an early closure fee equal to _____
__1% of the original loan amount with a minimum of $250 and a maximum of $500__
__if closed within the first three years.__
☒ Returned Payment Charge - I agree to pay a fee of $ __$25.00__ for each check, negotiable order of withdrawal, draft or electronic payment I arrange in connection with this loan that is returned because it has been dishonored.

In the state of IOWA - THIS IS A CONSUMER CREDIT TRANSACTION

Security - (If neither of the next two options are checked, this loan is not specifically secured except: 1. through cross collateralization from other loans; and 2. a security interest in all deposit accounts with U.S. Bank, N.A.)
☒ Separate Security - This loan is secured by separate __Deed of Trust__ , dated __11/15/2006__ .
☐ Security Agreement - I give you a security interest in the Property described below. The rights I am giving you in this Property and the obligations this agreement secures are defined on page 4 of this agreement.

5724 WHITEWOOD DR
SALT LAKE CTY, UT 84118

This property will be used for __Consumer__ purposes.

(page 1 of 5)

Experi® © 1981, 1988, 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form USBNDASV-NDX 8/19/2004

Loan number _____511498077_____

| ANNUAL PERCENTAGE RATE<br>The cost of my credit<br>as a yearly rate. | FINANCE CHARGE<br>The dollar amount the<br>credit will cost me. | AMOUNT FINANCED<br>The amount of credit<br>provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid when<br>I have made all scheduled payments. |
|---|---|---|---|
| 7.4890 % | $ $91,196.40 | $ $60,000.00 | $ $151,196.40 |

My Payment Schedule will be:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| 360 | 419.99 | monthly beginning 12/25/2006 |
|  |  |  |
|  |  |  |
|  |  |  |

☐ **Variable Rate**
  ☐ This note contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
  ☐ The annual percentage rate may increase during the term of this transaction if _____
  _____.
  A rate increase will take the form of _____ .
  If the rate increases by _____ % in _____ the _____
  _____ will increase to _____. The interest rate may not increase more
  often than _____, and may not increase more than _____ % each _____.
  The interest rate will not go above _____ %.

Security - I am giving a security interest in
  ☐ the Goods or Property being purchased.
  ☒ my deposit accounts and other rights to
    the payment of money from U.S. Bank, NA.
  ☒ Collateral securing other loans with you may also secure this loan.

☒ (description of other property)
5724 WHITEWOOD DR
SALT LAKE CTY, UT 84118

☒ **Late Charge** - I agree to pay a late charge if any scheduled payment (or part thereof) is made more than __5__ days after it is due equal to $29.00                                                                                                              .
**Prepayment** - If I pay off this note early, I    ☒ may    ☐ will not    have to pay a penalty.
☒ **Assumption** - Someone buying the property securing this loan cannot assume this loan on its original terms.
☐ **Required Deposit** - The annual percentage rate does not take into account my required deposit.
Filing Fees $ _____  Non Filing Insurance $ _____
I can see my contract documents for any additional information about nonpayment, default, and any required repayment before the schedule date, and prepayment refunds and penalties.

**Credit Insurance** - Credit life, credit accident and sickness (disability) are not required to obtain credit and you will not provide them unless I sign and agree to pay the additional premium. If I want such insurance, you will obtain it for me (if I qualify for coverage). My (Our) signature(s) below means I (we) want the coverages signed for, and only those coverages.

**CREDIT LIFE:**
  ☐ **Single.**   Premium: $ _____ Term _____
    Date of Birth _____ Insured: _____   X _____ Date _____
  ☐ **Joint.**   Premium: $ _____ Term _____
    Date of Birth _____ 1st Insured: _____   X _____ Date _____

    Date of Birth _____ 2nd Insured: _____   X _____ Date _____
**CREDIT DISABILITY:**
  ☐ **Single.**   Premium: $ _____ Term _____
    Date of Birth _____ Insured: _____   X _____ Date _____

See the section titled "Monthly Outstanding Balance Insurance Premiums" below for any transaction secured by (a) real estate, or (b) any personal property that is a dwelling, such as a mobile home.
**NONE: I/We do not desire credit insurance of any kind on this account. (All borrowers/debtors sign below)**

  X _[signature]_ Date 11-15-06    X _[signature]_ Date 11-15 06
☒ **Property Insurance** - Property insurance is required. I may obtain property insurance from anyone I want that is acceptable to you.
☐ **Single Interest Insurance** - Single interest insurance (sometimes referred to as VSI) is required. I may obtain single interest insurance from anyone I want that is acceptable to you. If I get the insurance from or through you, I will pay $ _____ for _____ of coverage.

(page 2 of 5)

Experi® ©1981, 1988, 1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form USBNDASV-NDX 8/19/2004

ADDITIONAL TERMS OF THE NOTE                                                                                             511498077

**DEFINITIONS** - "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - You are a National bank located in North Dakota. The interest rate, fees and related charges that you can charge for this loan are pursuant to the law of the state of North Dakota, regardless of where this loan is made or where I live. As for other issues, the law of my state of residence and the law of the state where any property is located will apply.

The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and me.

**THIS FORM** - This form is designed to be used for many types of transactions. A paragraph or section that begins with a " ☐ " that is not checked does not apply to this loan.

**PAYMENTS** - Each payment I make on this loan will be applied (to the extent of the payment) as follows to: (1) monthly outstanding balance insurance premiums (for loans secured by real estate or a personal property residence, if I elect to buy such insurance); (2) accrued interest; (3) principal (as explained below); (4) charges other than interest or principal, if any; and (5) principal. The portion applied to principal in step (3) above will be the difference between the *scheduled* payment amount and the sum of any monthly outstanding balance insurance premium and the accrued interest.

**PREPAYMENT** - I may prepay this loan in whole or in part at any time. If I prepay in part, I must still make each later payment in the original amount as it becomes due until this note is paid in full.

**BALLOON PAYMENTS** - In the states of Idaho, Colorado, and Wyoming, under certain circumstances as defined by law in those states I may be obligated to refinance a balloon payment. If a balloon payment arises, if you are obligated under state law to refinance that payment, and if federal law does not preempt state law, then you will refinance a balloon.

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If "Variable Rate" is checked on page 1, I will pay interest at the rates in effect from time to time. If a payment is not sufficient to pay the accrued interest, as of a scheduled payment date, the accrued and unpaid interest will be added to principal, and itself earn interest.

Decreases in the interest rate for this note will have the opposite effect on payments that increases would have. The interest rate(s) and other charges on this loan will never exceed the highest rate or charge allowed by law for this loan. Changes in the index between scheduled changes in the interest rate will not affect the interest rate. If the index specified on page 1 ceases to exist, I agree that you may substitute a similar index for the original.

**CURE RIGHTS** - In some circumstances (and some states in which this note is used) your rights and remedies are subject to a duty to give me a right to cure a default and to get notice of that right before you can exercise some of your remedies. The states include (and may not be limited to) Colorado, Iowa, Kansas, Missouri, Nebraska, South Carolina, and West Virginia. There also may be similar rights of reinstatement, cure and redemption in some states when real property or a residence is the collateral. You will provide such rights, and notice of such rights before exercising your remedies, as provided by law.

**DEFAULT** - I will be in default on this loan and any agreement securing this loan if:
1. I fail to make a payment in full when due; or
2. Your prospect of payment, performance, or ability to realize upon the property is significantly impaired.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

**REMEDIES** - Subject to the CURE RIGHTS section above, if I am in default on this loan or any agreement securing this loan, you may exercise your rights provided by law and this agreement. I also understand and agree to the following:
1. You may accelerate the due date of the unpaid principal balance of the loan, plus accrued interest and charges, making it due in its entirety before the scheduled due date.
2. You may realize on any property securing this transaction.
3. You may demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
4. You may make a claim for any and all insurance benefits or refunds that may be available.

If I default and you choose not to exercise a remedy, you do not lose the right to treat the event as a default if it happens again.

**COSTS OF COLLECTION** - I agree to pay the costs you incur to collect this debt and realize on any collateral in the event of my default.

In the event of my bankruptcy, and without regard to my state of residence, these costs will include your reasonable attorney's fees for an attorney who is not your salaried employee in the bankruptcy proceedings.

The following additional fees and issues will depend on whether we have to collect this loan in a listed state:

In **Arizona, California, Illinois, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Montana, Nevada, New Mexico, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia and Washington** these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee).

In **Arkansas** these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) not to exceed 10% of the amount of principal and accrued interest.

In **Colorado, Maine, North Carolina, and South Carolina** these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) not to exceed 15% of the unpaid debt for collection after default.

In **Delaware** these costs will include reasonable attorneys' fees after default and referral to an attorney not your regularly salaried employee, court costs, alternative dispute resolution costs, and other collection costs, including fees and charges of collection agencies.

In **Florida** these costs include your reasonable attorneys' fees of ten percent (10%) of the principal sum due on this note or such larger amount as may be reasonable and just.

In **Georgia**, these costs include attorney's fees of 15 percent of the principal and interest then owed. I waive and renounce any exemption I may be entitled to under Georgia law as to any property that secures this debt. I assign any such exemption to you.

In **Idaho** these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee). This provision for attorney's fees does not apply if this loan is a consumer loan with a principal amount of $1,000.00 or less.

In **Indiana**, these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee); and in any collection efforts, I waive any relief I might be entitled to from evaluation and appraisement.

In **Iowa, Nebraska, North Dakota, Ohio and West Virginia** these costs will not include attorney's fees.

In **Kansas** these costs will include your reasonable attorney's fees or collection agency fees, up to 15% of the unpaid amount due and payable under this note. You are entitled to the collection of attorneys' fees or collection agency fees, but not both. This provision is applicable only if collection is handled by someone other than a salaried employee of yours.

In **Louisiana**, these costs include your reasonable attorneys' fees not to exceed 25% of the unpaid debt after default and referral to an attorney for collection.

In **Massachusetts** this includes your reasonable attorneys' fees, except when prohibited by law (such as on loans of less than $1,000).

In **Missouri and Alabama**, these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) if it is necessary to bring suit of 15% of the amount due and payable under this note).

In **New Hampshire**, this includes your reasonable attorneys' fees. If I successfully assert a partial defense or set-off, recoupment or counterclaim to an action you bring, the court may reduce the amount of attorneys' fees that you may recover from me. If I prevail in an action or defense against you, I may recover the amount of my reasonable attorneys' fees.

In **Oklahoma** these costs will include your reasonable attorney's fees (for an attorney who is not your salaried employee) not to exceed 15% of the unpaid debt after default; this provision for attorney's fees does not apply to certain supervised loans as provided in Okla. Statutes 14A § 3-514.

**SECURITY INTEREST IN DEPOSIT ACCOUNTS AT U.S. BANK, N.A.** -
**Governing law:** For purposes of this security interest, we agree that the law of the state of North Dakota will control as to the creation, perfection, and effect of perfection of the interest granted in this paragraph. (Technically speaking, we are agreeing that North Dakota is your jurisdiction, as provided in N.D. Stat. § 41-9-24.)

**Grant:** I grant to you a security interest in any and all deposit accounts (demand, time, savings, passbook, and specifically including but not limited to any certificated time accounts) I currently have or hereafter create with U.S. Bank, N.A. (your affiliate).

**Exception:** This grant does not apply to accounts that constitute a part of any qualified retirement plan (such as an Individual Retirement Account), any retail repurchase agreement, or any account where my only right is clearly and solely in a representative capacity.

**Secures:** This security interest secures the payment of this debt and any other debt I may owe you, now or hereafter.

**Usage:** You have the right to direct the U.S. Bank, N.A. to restrict or prohibit further withdrawals from my accounts, and to comply with your instructions directing disposition of funds in my accounts, including, to apply such funds toward payment of the secured debts. While you have the right to do this at any time, and without notice, it is your present intention to exercise these rights only in the event of my default on this or any other secured obligation, and to provide notice to me.

U.S. Bank, N.A. agrees to comply with your instructions for disposition of funds in my accounts without first obtaining my consent (other than the consent contained and expressed in this agreement).

I understand that U.S. Bank, N.A. is your affiliate.

**Setoff:** I also acknowledge that U.S. Bank, N.A. has a right of setoff in the event I owe money to U.S. Bank, N.A. This right of setoff, in the event of a conflict with the security interest granted here, will be subordinate to this security interest.

**MONTHLY OUTSTANDING BALANCE INSURANCE PREMIUMS** - This section applies to any transaction secured by (a) real estate, or (b) any personal property that is a dwelling, such as a mobile home.

The insurance premiums for credit life and credit disability insurance are calculated on the monthly outstanding balance method. This means that each month you multiply the loan principal balance by the monthly premium rate (which is a rate per $100 of debt per month).

Each of the premiums quoted above for credit life and credit disability are the total of all the monthly premiums for the respective insurance, based on the *assumed* monthly principal balances. These assumed monthly principal balances assume that the interest rate will remain the same throughout the term of the transaction (which is not likely if this is a variable rate transaction), and that I will make all my payments in full and on time.

If the interest rate increases, and my periodic payment does not increase each month (as is normally how you schedule payments for variable rate transactions) then the amount I will pay for insurance I have bought from you will be more. Likewise, if the interest rate declines, or if I prepay, the amount

*(page 3 of 5)*

511498077

for insurance will decline, as will the amount and length of coverage. In either case, this effect on premium is because the actual monthly principal balances will not be as assumed.

If I buy insurance from you for credit life or credit disability, the premiums are included in my periodic payments, and in the TOTAL OF PAYMENTS section. If I cancel the insurance before the scheduled maturity date, my periodic payment amounts will remain as originally scheduled. This means that more of my payment will be available for the principal than otherwise would be true, and the number of payments, or the amount of my final payment, will be less than it otherwise would be. (See the paragraph titled PAYMENTS above.)

OBLIGATIONS INDEPENDENT - This paragraph applies if there are multiple parties (for example, a maker and a guarantor or co-maker) who are obligated to pay this loan. We understand that the obligation of each of us to pay this loan is independent of the obligation of the others to pay this loan. You may, without notice, release or give up any right you may have, extend new credit, renew or change this obligation, as to any of us, without affecting the obligation of any others (until this loan is paid in full).

You may fail to perfect your security interest in, impair, or release any security and I (we) will still be obligated to pay this loan.

WAIVER - I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

FINANCIAL STATEMENTS - I will give you any financial statements or information that you feel is necessary. All financial statements and information I give you will be correct and complete.

PURCHASE MONEY LOAN - If this is a Purchase Money Loan, you may include the name of the seller on the check or draft for this loan.

NAME AND LOCATION - My name and address indicated on page 1 are my exact legal name and my principal residence. I will provide you with at least 30 days' notice prior to changing my name or principal residence.

SKIP PAYMENTS - From time to time, you may offer me the chance to skip a payment on this loan. If I choose to accept this offer, I agree to pay a fee up to $50.00, and the term of this loan will be extended one month.

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

SECURED OBLIGATIONS - This security agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt I have with you now or later. Property described in this security agreement will not secure other such debts if the Property is my principal dwelling. Also, this security agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This security agreement will last until it is discharged in writing.

For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement:
(a) Payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan; and
(b) Payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items were acquired.

No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan of which the proceeds, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

PROPERTY - The word "Property," as used here, includes all property that is listed in the security agreement on page 1. If a general description is used, the word "Property" includes all my property fitting the general description. Property also means all benefits that arise from the described Property (including all proceeds, insurance benefits, payments from others, interest, dividends, stock splits and voting rights). It also means property that now or later is attached to, is a part of, or results from the Property, and all supporting obligations. "Proceeds" includes anything acquired on the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising out of the Property; and any collections and distributions on account of the Property.

OWNERSHIP AND DUTIES TOWARD PROPERTY - Unless a co-owner(s) of the Property signed a third party agreement, I represent that I own all the Property. I will defend the Property against any other claim. I agree to do whatever you require to perfect your interest and keep your priority. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.

I will keep the Property in my possession (except if pledged and delivered to you). I will keep it in good repair and use it only for its intended purposes. I will keep it at my address unless we agree otherwise in writing.

I will not try to sell or transfer the Property, or permit the Property to become attached to any real estate, without your written consent. I will pay all taxes and charges on the Property as they become due. I will inform you of any loss or damage to the Property. You have the right of reasonable access in order to inspect the Property.

If the Property is a motor vehicle, I represent that it is not a vehicle seized pursuant to any federal, state or local forfeiture law.

INSURANCE - I agree to buy the insurance coverages required on page 2 covering the Property against the risks and for the amounts you require. I will name you as loss payee on any such policy. If there is an insured loss, you may require added security on this loan if you agree that insurance proceeds may be used to repair or replace the Property. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will buy the insurance from a firm authorized to do business in the appropriate state. The firm will be reasonably acceptable to you. I will keep the insurance until all debts secured by this agreement are paid.

COLLATERAL PROTECTION INSURANCE - Unless I provide you with evidence of the insurance coverage required by my agreement with you, you may purchase insurance at my expense to protect your interests in my collateral. This insurance may, but need not, protect my interests. The coverage that you purchase may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by you, but only after providing you with evidence that I have obtained insurance as required by our agreement. If you purchase insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges you may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own. I agree that the cost of such insurance will be due immediately.

FILING - I authorize you to file a financing statement covering the Property. I agree to comply with and facilitate your requests in connection with obtaining possession of or control over the Property until this security agreement is terminated. A copy of this security agreement may be used as a financing statement when allowed by law.

DEFAULT AND REMEDIES - If I am in default, in addition to the remedies listed in the note portion of this document and subject to any of the limitations in the CURE paragraph, you may (after giving notice and waiting a period of time, if required by law):
(a) Pay taxes or other charges, or purchase any required insurance, if I fail to do these things (but you are not required to do so). You may add the amount you pay to this loan and accrue interest on that amount at the interest rate(s) in effect from time to time, on this note until paid in full;
(b) Require me to gather the Property and any related records and make it available to you in a reasonable fashion;
(c) Take immediate possession of the Property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may sell, lease or dispose of the Property as provided by law. (If the Property includes a manufactured home, you will begin the repossession by giving me notice and an opportunity to cure my default, as required by law.) You may apply what you receive from the sale of the Property to your expenses and then to the debt. If what you receive from the sale of the Property is less than what I owe you, you may take me to court to recover the difference (to the extent permitted by law); and
(d) Keep the Property to satisfy the debt.

I agree that when you must give notice to me of your intended sale or disposition of the Property, the notice is reasonable if it is sent to me at my last known address by first class mail 10 days before the intended sale or disposition. I agree to inform you in writing of any change in my address.

ASSUMPTIONS - This security agreement and any loan it secures cannot be assumed by someone buying the Property from me. This will be true unless you agree in writing to the contrary. Without such an agreement, if I try to transfer any interest in the Property, I will be in default on all obligations that are secured by this security agreement.

---

Deficiency Notice: This notice applies if the collateral involves a motor vehicle that is consumer goods
NOTICE: THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, I MAY HAVE TO PAY THE DIFFERENCE.

---

This notice applies to Missouri customers specifically and is generally true for all customers:
ORAL AGREEMENTS: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

---

ARIZONA: Motor Vehicle as Collateral: The following information applies if this security agreement, or another that secures this note includes a motor vehicle as that term may be defined by Arizona law:
It is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default. Any notice of default you send me will be mailed to my address given on page 1. It is my responsibility to tell you my new address if it changes. (Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony, which for a first offense carries a maximum jail sentence of 1.5 years. The maximum jail sentence may be greater if the defendant has a prior criminal record. The court may impose a fine of no more than $150,000.)

---

CALIFORNIA: Disability Insurance: As provided by California Civil Code Section 1812.400 et seq, if you have directly participated in, arranged, or received a commission or other compensation for the sale of credit disability insurance to me, you will not invoke any of your remedies against me because of my nonpayment of any sum due during a disability claim period. A disability claim period begins on the due date of the first payment I don't pay for which I claim disability coverage arising from a then current disability and continues for three calendar months or until the insurer pays or rejects my claim, whichever occurs first.

*(page 4 of 5)*

**THIRD PARTY AGREEMENT**
For the purposes of the provisions within this enclosure "I," "me" or "my" means the person signing below and "you" means the Lender identified on page 1.
I agree to give you a security interest in the Property that is described on page 1. I agree to the terms of this note and security agreement but I am in no way personally liable for payment of the debt. This means that if the Borrower defaults, my interest in the Property may be used to satisfy the Borrower's debt. I agree that you may, without releasing me or the Property from this Third Party Agreement and without notice or demand upon me, extend new credit to any Borrower, renew or change this note or security agreement one or more times and for any term, or fail to perfect your security interest in, impair, or release any security (including guaranties) for the obligations of any Borrower.
I HAVE RECEIVED A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT.
NAME

X

**NOTICE TO COSIGNER**
You (the cosigner) are being asked to guaranty this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.
You may have to pay up to the full amount of the debt if the borrower does not pay. You also may have to pay late fees or collection costs, which increase this amount.
The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.
This notice is not the contract that makes you liable for the debt.

Garnishment is not a remedy available in Pennsylvania and Texas.

**AUTOMATIC WITHDRAWAL:**
I　☒ DO　☐ DO NOT　want Automatic Withdrawal.
By signing below I authorize you to automatically withdraw my regular payment from my transaction account listed below on each payment date.

Account number for automatic payment:

_____153100394920_____

*[signatures]*

**ACH CANCELLATION FEE:** I agree that if I arrange for automatic payments on this loan, either on this form or otherwise, and if my automatic payments are stopped for any reason not your fault, I agree to pay you an ACH cancellation fee of $ _____50.00_____ .
I understand that automatic payments stop, and must be re-contracted for, if, for example, I close my account (without arranging for automatic payment from another account), there is insufficient funds in the account, or I stop payment on an automatic payment.

This note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this note may, on behalf of the maker of this note, create a microfilm or optical disk or other electronic image of this note that is an authoritative copy as defined in such law. The holder of this note may store the authoritative copy of such note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

Loan number: _____511498077_____

**SIGNATURES** - I agree to the terms set out on pages 1 thru 5 of this agreement. I have received a copy of this document on today's date.

Cosigners - see notice above before signing.

In the notices in this box "you" means the borrower(s):

Notice to Consumer: 1. Do not sign this Agreement before you read it. 2. You are entitled to a copy of this Paper. 3. You may prepay the unpaid balance at any time. If you prepay this loan you
☒ MAY　☐ WILL NOT　have to pay a penalty.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Signature X *[signature]*

Signature *[signature]*

Signature _____

**AUTHENTICATION BY U.S. BANK, N.A.:**
U.S. Bank, N.A. affiliate of and agent for the lender on this loan, acknowledges and agrees to the control agreement contained in the Security Interest in deposit accounts, and the subordination of its right of setoff to this security interest if and to the extent of a conflict.
This is intended as an authentication. U.S. BANK, N.A.

# EXHIBIT "B"

9979606
Book - 9394 Pg - 4704-4710
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
FIRST AMERICAN LENDERS ADV
BY: ZJM, DEPUTY - WA 7 P.

This document prepared by:
First American Title Insurance Company
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, OH 44114

Return To:
First American Title Insurance Company
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, OH 44114

Parcel Tax Serial Number: 21-17-180-019-0000
_____ State of Utah _____ Space Above This Line For Recording Data _____

Order #:    10741808
ALS #: 5114 98077

# DEED OF TRUST
(With Future Advance Clause)

1. DATE AND PARTIES. The date of this Deed of Trust (Security Instrument) is 11/15/2006
and the parties, their addresses and tax identification numbers, if required, are as follows:

GRANTOR:    ORREN H LABRUM AND ALTHEA L LABRUM

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

TRUSTEE:    U.S. Bank, National Association
15 W. South Temple
Salt Lake City, UT 84101

LENDER:    U.S. Bank, National Association N.D.
4325 17th Avenue SW
Fargo, ND 58103

2. CONVEYANCE. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

The real estate deed of trust herein is described in Exhibit "A" which is attached hereto and hereby incorporated herein by reference.

The property is located in SALT LAKE ......................... at 5724 Whitewood Dr ...............................
                              (County)
.................................., Salt Lake City ........................., Utah 84118 ..........
       (Address)                         (City)                              (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

10741808

UTAH - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)    (page 1 of 6)
Expere_ 1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REDT-UT 9/5/2001

3.  MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time shall not exceed $ 60,000.00............................................ . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4.  SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

    Borrower's Name(s): ALTHEA L LABRUM AND ORREN H LABRUM

    Note Date:        11/15/2006                        Maturity Date:    11/25/2036

    Principal/Maximum  60,000.00
    Line Amount:

    B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced and whether or not such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the debt. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
    C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
    D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

    This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5.  PAYMENTS. Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6.  WARRANTY OF TITLE. Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Grantor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8.  CLAIMS AGAINST TITLE. Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9.  DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

*(page 2 of 6)*

Exßere; _1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REDT-UT 9/5/2001                              10741808

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

    Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument. This assignment will remain effective during any period of redemption by the Grantor until the Secured Debt is satisfied. Grantor agrees that Lender is entitled to notify Grantor or Grantor's tenants to make payments of Rents due or to become due directly to Lender after such recording. However, Lender agrees not to notify Grantor's tenants until Grantor defaults and Lender notifies Grantor of the default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

    If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. CONDEMNATION. Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. INSURANCE. Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. ESCROW FOR TAXES AND INSURANCE. Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. SUCCESSOR TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

26. WAIVERS. Except to the extent prohibited by law, Grantor waives all appraisement and homestead exemption rights relating to the Property.

27. OTHER TERMS. If checked, the following are applicable to this Security Instrument:
    ☐ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.
    ☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.
    ☐ Fixture Filing. Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.
    ☐ Riders. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
        ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ..............................................
    ☐ Additional Terms.

SIGNATURES: By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

*(Signature)* ALTHEA L LABRUM 11-15-06 *(Date)*    *(Signature)* ORREN H LABRUM 11/15/06 *(Date)*

ACKNOWLEDGMENT:
STATE OF ......Utah......, COUNTY OF ......Salt Lake...... } ss.
(Individual) This instrument was acknowledged before me this ...15... day of ......November...... 2006 by ALTHEA L LABRUM AND ORREN H LABRUM
My commission expires:

(Seal)                                    (Notary Public)
                            Residing at: 2580 So 2700 W
                                         West Valley, UT 84119

AMANDA NGUYEN
Notary Public
State of Utah
My Comm. Expires JULY 16, 2007
2580 S. 2700 W. WEST VALLEY CITY, UT 84119

Exπerɛ̃  1994 Bankers Systems, Inc., St. Cloud, MN Form USB-REDT-UT 9/5/2001

10741808
(page 6 of 6)

# EXHIBIT "A"

## LEGAL DESCRIPTION

LOT 91, WHITE WOOD ESTATES NUMBER 2 AMENDED SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE SALT LAKE COUNTY RECORDER'S OFFICE. SALT LAKE, UT

21-17-180-019-0000
5724 S WHITEWOOD DR; TAYLORSVILLE, UT 84118-3651

20063041954290
10741808/f

LABRUM
10741808                          UT
FIRST AMERICAN LENDERS ADVANTAGE
DEED OF TRUST